UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS C. TABORELLI,

        Plaintiff,        Case No. 1:10-cv-1161

v.        Honorable Paul L. Maloney

RICHARD M. CZOP et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Christiansen, Embry, Huss, Cascaddan, Dykehouse and Scott. The Court will serve the complaint against Defendants Eaton, Smith, Waite, Gilfoyl and Czop.

**Factual Allegations**

Plaintiff is incarcerated in the E.C. Brooks Correctional Facility, but the events giving rise to his action occurred while he was incarcerated at the Ionia Maximum Correctional Facility (ICF). In his *pro se* complaint, he sues the following ICF employees: Dr. Richard Czop, Diane Christiansen, Ronald Embry, Erica Huss, Melanie Cascaddan, Stephen Dykehouse, Bernard Scott, (Unknown) Smith, R. Waite, (unknown) Gilfoyl and (unknown) Eaton.

Plaintiff first claims that Defendants Christiansen, Embry, Huss, Cascaddan, Dykehouse and Scott raised his security level two or more levels and transferred him to a level IV facility without holding a hearing in violation of his due process rights.[1] Plaintiff alleges that Defendants disregarded his poor physical condition and subjected him to "unjustified and harmful disciplinary measures present at high level facilities." (Compl., Page ID #7.)

Plaintiff further contends that he was denied proper medical treatment in violation of his Eighth Amendment rights. Plaintiff alleges that he began suffering severe chest and head pain on the afternoon of August 1, 2009. Plaintiff told Defendant Eaton that he was unable to leave his cell for a visit because he was in too much pain to make it to the visiting room. Eaton allegedly informed Defendants Smith, Waite and Gilfoyl of Plaintiff's condition. According to Plaintiff, Defendants Eaton, Smith, Waite and Gilfoyl all were aware that he suffers from heart disease and has a tumor next to his brain, but failed to notify health care of his condition.

On August 26, 2009, Defendant Czop sent Plaintiff a note stating that he did not see the need for new cardiac studies, despite the fact that Plaintiff suffers from severe aortic stenosis and an acoustic neuroma. Plaintiff alleges that surgery for the removal of his acoustic neuroma

---

[1] In the MDOC, security classifications, from least to most secure, are as follows: Community Status, Levels I, II, III, IV, V, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ B (eff. Dec. 31, 2007).

scheduled on September 14, 2009 at the University of Michigan Medical Center, had to be cancelled because of his heart condition and Czop's refusal to have the necessary cardiac testing done in a timely manner. Plaintiff had a heart catheterization on November 9, 2009, and underwent open heart surgery three days later to replace his aortic value. As part of Plaintiff's post-surgical therapy, a nurse was directed to assist Plaintiff in walking from his cell to health services on a regular basis. Plaintiff claims that Czop knew that the therapy was not being provided and ignored Plaintiff's pleas to help him walk. As a result, Plaintiff now is confined to a wheelchair. Plaintiff also alleges that he fractured two fingers on December 23, 2009, but Czop refused to have the fractures set because "you don't put a cast on fingers." (Compl., Page ID#6). Plaintiff contends that as a result of Czop's refusal to immobilize the hand, it is extremely weak, has limited range of motion and is noticeably deformed.

For relief, Plaintiff seeks compensatory and punitive damages.

**Discussion**

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Security Classification**

Plaintiff alleges that Defendants Christiansen, Embry, Huss, Cascaddan, Dykehouse and Scott raised his security level without holding a hearing in violation of his due process rights. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in his security classification. The Supreme Court has held that a prisoner does not have a protected liberty interest

in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). While Plaintiff alleges that Defendants subjected him to "unjustified and harmful disciplinary measures present at high level facilities," Plaintiff does not specifically allege how his incarceration at level IV constitutes an atypical and significant hardship in relation to the ordinary incidents of prison life. In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit held that an inmate did not have a liberty interest in his placement in administrative segregation, the highest security level within the Michigan Department of Corrections, because it did not constitute an atypical and significant hardship within the context of his prison life. *See also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976); *see also Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification). Plaintiff, therefore, fails to state a due process claim against Defendants Christiansen, Embry, Huss, Cascaddan, Dykehouse and Scott arising from his increased security classification.

B. **Denial of Medical Treatment**

At this stage of the proceedings, the Court finds that Plaintiff's Eighth Amendment claim for denial of medical treatment against Defendants Eaton, Smith, Waite, Gilfoyl and Czop are sufficient to state a claim. Accordingly, the Court will order service of the complaint against those Defendants.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Christiansen, Embry, Huss, Cascaddan, Dykehouse and Scott will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Eaton, Smith, Waite, Gilfoyl and Czop.

An Order consistent with this Opinion will be entered.


Dated:   December 13, 2010                /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          Chief United States District Judge