UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| THOMAS C. TABORELLI, #154922, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-1161 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| RICHARD M. CZOP, M.D., et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint concerns conditions of his confinement at the Ionia Maximum Correctional Facility (ICF) between August 1, 2009 and April 22, 2010. The defendants are Richard M. Czop, M.D., Sergeant Mike Smith, and Corrections Officers Randall Waite, Mark Guilfoyle and Sharon Eaton. Plaintiff alleges on the afternoon of August 1, 2009, he felt ill and declined to see a visitor. He alleges that defendants Smith, Waite, Guilfoyle and Eaton (who allegedly were aware of his illness) failed to contact ICF's health care department in violation of his Eighth Amendment rights. He alleges that Dr. Czop failed to provide appropriate medical care in violation of his Eighth Amendment rights. Plaintiff seeks an award of damages.

The matter is before the court on defendants' motions for summary judgment. (docket #s, 18, 37, 41). Defendant Czop's motion is limited to seeking summary judgment based on the affirmative defense of failure to exhaust prison remedies, provided by 42 U.S.C. § 1997e(a).[1]

_____

[1] Plaintiff has never complied with the May 31, 2011 order granting defendant Czop's motion to compel. (5/31/11 Order, docket # 42). More than eight months ago, the court ordered that plaintiff "sign the release attached as Exhibit #1 to defendant's reply brief (docket # 35-2 at ID #

Plaintiff has filed his response.  (docket #s 30, 47, 53).  Plaintiff concedes that defendants Guilfoyle and Waite are entitled to summary judgment.  (docket # 47, ID# 286).  For the reasons set forth herein,  I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that defendants' motions for summary judgment (docket #s, 18, 37, 41) be granted,  and that judgment be entered in defendants' favor on all plaintiff's claims against defendants in their individual capacities.

## Applicable Standards

### A.    Summary Judgment

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Kizer v. Shelby County Gov't*, 649 F.3d 462, 466 (6th Cir. 2011).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  "The court need consider only the cited materials, but it may consider other

---

221) and mail it to the attorneys for defendant Czop within fourteen days from entry of th[e] order, and to file proof of service of same with the court."  (docket # 42, ID# 277).  The court warned plaintiff that failure to comply with the order would result in the entry of an order under Rule 37(b)(2)(A)(ii) of the Federal Rules of Civil Procedure "prohibiting plaintiff from introducing any evidence regarding his medical condition."  (docket # 42, ID# 277).  Preclusive sanctions against plaintiff are clearly warranted, but it is not necessary to impose them.  Defendant Czop has demonstrated that he is entitled to judgment in his favor on other grounds.

materials in the record." FED. R. CIV. P. 56(c)(3).  The court must draw all justifiable inferences in

favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

       A party asserting that a fact cannot be genuinely disputed must support the assertion

as specified in Rule 56(c)(1).  FED. R. CIV. P. 56(c)(1).  Once the movant shows that "there is an

absence of evidence to support the nonmoving party's case," the nonmoving party has the burden

of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations

of his pleadings.  FED. R. CIV. P. 56(e)(2), (3); *see Bozung v. Rawson*, 439 F. App'x 513, 518-19 (6th

Cir. 2011).  The motion for summary judgment forces the nonmoving party to present evidence

sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which

a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543,

549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Donald v. Sybra, Inc.*, No. 10-2153,

__ F.3d __, 2012 WL 117613, at * 2 (6th Cir. Jan. 17, 2012); *Hirsch v. CSX Transp., Inc.*, 656 F.3d

359, 362 (6th Cir. 2011).

       A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett*

*v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036,

1056 (6th Cir. 2001).  The moving party without the burden of proof needs only show that the

opponent cannot sustain his burden at trial.  "But where the moving party has the burden -- the

plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be

sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER,

*Summary Judgment Under the Federal Rules:  Defining Genuine Issues of Material Fact*, 99 F.R.D.

465, 487-88 (1984)).  The Court of Appeals has repeatedly emphasized that the party with the burden

of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence

satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury

would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL.,

MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056

(same).  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier

of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).  This higher standard applies to defendant

Czop's motion for summary judgment based on the affirmative defense provided by 42 U.S.C. §

1997e(a).

> **B.     Exhaustion**

Defendant Czop has asserted the affirmative defense of plaintiff's failure to exhaust

administrative remedies.  A prisoner bringing an action with respect to prison conditions under 42

U.S.C. § 1983 must exhaust available administrative remedies.  42 U.S.C. § 1997e(a); *see Jones v.*

*Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532

U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner

may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See*

*Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  "This requirement is a strong one.  To further the

purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the

remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216.  The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered."  549 U.S. at 220.  The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.  *Jones v. Bock*, 549 U.S. at 218-19.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).  Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court.  548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a).  The procedural bar does not apply where the State declines to enforce its own procedural rules.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

-5-

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[2]  In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies.  *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance.  The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control.  *Id.* at ¶ P.  If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.*  The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).  Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted.  *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

---

[2]A copy of the policy directive is found in the record.  *See* docket # 41-2, ID#s 255-61.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or her designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file

a grievance or abandon the process before completion and claim that he has exhausted his remedies

or that it is futile for him to do so because his grievance is now time-barred under the regulations.");

*see Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into

statutory exhaustion requirements where Congress has provided otherwise.").

### Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff is serving lengthy prison

sentences in the custody of the Michigan Department of Corrections (MDOC).[3]  He is currently an

inmate at the Chippewa Correctional Facility (URF).

### 1.      Plaintiff's Confinement at the Ionia Maximum Correctional Facility (ICF)

Plaintiff was an inmate at ICF at all times relevant to his complaint.  On August 1,

2009, Randy Waite, Sharon Eaton and Mark Guilfoyle were corrections officers at ICF.  (Waite Aff.

¶ 1, docket # 19-3, ID# 122; Eaton Aff. ¶ 1, docket # 19-2, ID# 119; Guilfoyle Aff. ¶ 1, docket # 32-

1, ID# 234).  Martin Smith was a Sergeant at ICF.  (Smith Aff. ¶ 1, docket # 19-4, ID# 125).  Officer

Eaton informed plaintiff that he had a visitor.  Plaintiff stated that he did not feel well, and therefore

declined the visit.  Eaton notified Control Center staff that plaintiff would not attend the visit

because he was not feeling well.  Plaintiff did not appear to be in serious pain or distress.  Eaton did

not interpret plaintiff's comments as indicating that he had a serious illness requiring immediate

---

[3]Plaintiff "was convicted after a jury trial of first-degree criminal sexual conduct (CSC) (sexual penetration by an assailant armed with a weapon), M.C.L. § 750.520b(1)(e), armed robbery, M.C.L. § 750.529, and first-degree home invasion, M.C.L. § 750.110a(2). He was sentenced [on January 14, 2000] as an habitual offender, fourth offense, M.C.L. § 769.12, to concurrent terms of imprisonment of 37-1/2 to 60 years for CSC, 35 to 60 years for armed robbery, and 24 to 60 years for home invasion." *People v. Taborelli*, No. 234051, 2002 WL 31951334, at * 1 (Mich. Ct. App. Dec. 10, 2002).

medical attention.  Plaintiff said nothing about having chest pains.  Plaintiff did not ask Eaton to

contact  health care staff or request immediate medical treatment.  (Eaton Aff. ¶¶ 3-5, docket # 19-2,

ID# 119).

Defendants Waite, Guilfoyle and Smith did not witness plaintiff experiencing serious

pain or emergent distress.  Plaintiff did not ask them for health care assistance or indicate that he

required immediate medical treatment.  (Waite Aff. ¶¶ 3-5, docket # 19-3, ID# 122; Smith Aff. ¶¶

3-5, docket # 19-4, ID# 125; Guilfoyle Aff. ¶¶ 3-6, docket # 38-2, ID#s 234-35).

Richard Czop, M.D., is one of the physicians who provided plaintiff's medical care

during his incarceration at ICF.  (docket # 20).[4]  On August 11, 2009, plaintiff reported to a social

worker that he had a good appetite and was feeling well.  He stated that his mood was good and that

he was not experiencing suicidal thoughts.  He related that he had lost weight and was waiting to

have surgery performed on his right ear.  The social worker noted that plaintiff appeared to be more

concerned about his physical health than his mental illness.  (docket # 20, ID# 137).

On August 19, 2009, Dr. Czop performed a follow-up examination addressing

plaintiff's mildly elevated blood sugar.  Dr. Czop noted that plaintiff was 62 years old.  Plaintiff

stated that he had a 40-year history of hypoglycemia and that he relieved his symptoms of feeling

"sick, dizzy, and sweaty" by eating sugar.  Dr. Czop suspected that plaintiff's problem was

hypoglycemia and that his blood sugar elevations were likely caused by eating pure sugar.  Plaintiff's

thyroid function was normal.  He had a cardiac murmur and some arrhythmia.  (docket # 20, ID#

140).

---

[4]Exhibit 20 consists of excerpts from plaintiff's medical records filed by MDOC defendants
Eaton, Smith and Waite.  The only medical evidence that plaintiff submitted in support of his claims
appears in the exhibits he attached to his complaint.

On August 21, 2009, Dr. Czop approved a consultation with specialists at Duane Waters Hospital.  Plaintiff was recovering from a left cataract removal and lens implant.  His eye surgeon had observed a similar problem on the right eye and recommended surgery.  Plaintiff was already scheduled for a September 2009 surgery to address an acoustic neuroma.[5]  Dr. Czop reviewed plaintiff's chart for cardiac status and found that plaintiff had experienced bradycardia[6] intermittently in the past with normal cardiac silhouette and no progression.  Dr. Czop noted that he would look out for any sustained, symptomatic bradycardia.  (docket # 20, ID# 141).

On August 26, 2009, Dr. Czop noted that plaintiff was scheduled for the acoustic neuroma surgery in a few weeks and it did not appear that any new cardiac studies were necessary.  (docket # 20, ID# 147).  On August 28, 2009, Dr. Czop approved an Ultram prescription for plaintiff while he awaited his September neuroma surgery.  (docket # 20, ID# 149).

On November 24, 2009, Dr. Czop placed plaintiff on "lay in" status for meals "effective from 11/24/2009 through 12/01/2009."  (docket # 1-22, ID# 32).  On December 23, 2009, Dr. Czop approved plaintiff for a right wrist/hand splint "as needed for comfort effective from 12/23/2009 through 01/06/2010."  (docket # 1-23, ID# 33).

---

[5]A neuroma is "a tumor growing from a nerve or made up largely of nerve cells and nerve fibers."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1285 (31st ed. 2007).

[6]Bradycardia is a "slowness of heartbeat, as evidenced by slowing of the pulse rate to less than 60."  DORLAND'S at 249.

2.      **Grievances**

Plaintiff did not file any grievance against Dr. Czop.  Plaintiff did pursue two grievances against others through Step III decisions.  On August 14, 2009, ICF's grievance coordinator received the following grievance:

> On 8-1-09 at approximately 3:00 p.m. I began to have chest and head pain.  It became severe.  Some time later I was told I had a visit.  I told the female officer that I was in too much pain and would be unable to make it to the visit.  At no time did anyone contact Healthcare to get me medical attention.  The staff are aware I have a brain tumor and heart disease.

(Grievance No. ICF-09-08-1868-27Z, docket # 1-19,  ID# 29; docket # 41-2, ID# 268).  On August 14, 2009, ICF's grievance coordinator issued the Step I decision rejecting the grievance.  (docket # 1-20, ID# 30; docket # 41-2, ID# 269).  The warden denied plaintiff's grievance at Step II:

> In this grievance you claim that you were having chest pains and head pain.  You later state you were told you had a visit but that you had told staff you were too ill to see your visit [sic].
>
> According to the Step I respondent, Grievance Coordinator Breedlove your grievance was rejected as a non-grievable issue because you missed a visit because staff did not contact health care.  According to your grievance you did not let staff know that you were having chest pains, only that you were not feeling well.  You cannot expect staff to interpret not feeling well as a medical emergency such as chest pains.  No violation of policy or procedure has occurred.
>
> In your appeal you state that your grievance was improperly rejected.  You state you did not state to staff you were feeling ill but that you had told them that you were having chest pains and head pain and they did not report it to health care.
>
> After further investigation of the Step II grievance and after speaking with staff who state that you did have a visit that day and that you stated to staff that you were in too much pain to walk up for the visit.  You never stated that you were suffering from chest pains.  If you had complained of chest pains staff would have contacted health care as that is a medical emergency.  I find no impropriety on the part of staff to exist.  Therefore, this grievance has been denied at this level.

(docket # 1-18, ID# 28; docket # 30-1, ID# 209; docket # 41-2, ID# 267).  On April 13, 2010, the

Step II denial of the grievance was upheld at Step III.  (docket # 1-16, ID# 26; docket # 41-2,  ID#

265).

        On November 19, 2009, ICF's grievance coordinator received a grievance dated

October 25, 2009, regarding a September 11, 2009 incident.  (Grievance No. ICF-09-11-2727-28E,

docket # 1-11, ID# 21; docket # 41-2, ID# 275).  Plaintiff's grievance stated that Diane Christiansen

and Ronald Embry had conspired to keep him at Security Level V and that as a maximum security

level prisoner he was not receiving the level of medical care he could have received at a lower

security classification level.  This grievance was denied at Step I because it was untimely, and the

denial was upheld on that basis at Steps II and III.  (docket # 1-8, ID#s 18, 20-21; docket # 41-2,

ID#s 272, 274-75).

        On November 23, 2010, plaintiff filed this lawsuit.

## Discussion

**1.**      **Eleventh Amendment Immunity**

        All plaintiff's claims for damages against defendants in their official capacities are

barred by Eleventh Amendment immunity.  The Eleventh Amendment bars suit in federal court

against a state and its departments or agencies unless the state has waived its sovereign immunity

or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court.  *See*

*Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  A suit against a state officer in his or her

official capacity is simply another way of pleading an action against the state. *See Will v. Michigan*

*Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008).

Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.

*See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.   Defendants are entitled to judgment in

their favor as a matter of law on plaintiff's claims for monetary damages against them in their official

capacities.

        **2.**        **Eighth Amendment**

        Plaintiff alleges that defendants Smith, Waite, Guilfoyle and Eaton were deliberately

indifferent to his serious medical needs in violation of the Eighth Amendment's Cruel and Unusual

Punishments Clause.   In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that

deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional

interference with treatment or intentional denial or delay of access to medical care, amounts to the

unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.   *Estelle*, 429 U.S.

at 104-05.   In judging the sufficiency of "deliberate indifference" claims, the court must view the

surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment,

and the possible consequences to the prisoner of failing to provide immediate medical attention.

*Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

        In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate

indifference standard.   Under *Wilson*, a prisoner claiming cruel and unusual punishment must

establish both that the deprivation was sufficiently serious to rise to constitutional levels (an

objective component) and that the state official acted with a sufficiently culpable state of mind (a

subjective component).  501 U.S. at 298.  No reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claims against these defendants.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "The objective component requires a plaintiff to show that 'the medical need at issue is sufficiently serious.'"  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)); *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010).  Although plaintiff's intransigence with regard to signing the release for his medical records has presented the court with a less than complete picture regarding all the medical attention he received during the relevant time period, the evidence before the court is evidence on which a reasonable trier of fact could find in plaintiff's favor on the objective component of an Eighth Amendment claim.

The second prong under *Estelle* requires a showing of "deliberate indifference" to plaintiff's serious medical need.[7]  The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.  A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the

---

[7]Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law.  *See Alspaugh v. McConnell*, 643 F.3d at 169; *Westlake*, 537 F.2d 860 n. 5; *accord Minneci v. Pollard*, 132 S. Ct. 617 (2012) (refusing to imply a *Bivens* remedy against employees of a privately operated federal prison for allegedly providing inadequate medical care because state law authorized adequate alternative damages actions).

official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837.  The

Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the

subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed
> a sufficiently culpable state of mind in denying medical care.  Deliberate indifference
> requires a degree of culpability greater than mere negligence, but less than acts or omissions
> for the very purpose of causing harm or with knowledge that harm will result.  The prison
> official's state of mind must evince deliberateness tantamount to intent to punish.
> Knowledge of the asserted serious needs or of circumstances clearly indicating the existence
> of such needs, is essential to a finding of deliberate indifference.  Thus, an official's failure
> to alleviate a significant risk that he should have perceived but did not, while no cause for
> commendation, cannot under our cases be condemned as the infliction of punishment

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

Plaintiff has not presented evidence sufficient to support the subjective component

of an Eighth Amendment claim for deliberate indifference to serious medical needs against any

defendant.  On August 1, 2009, plaintiff indicated to defendant Eaton that he did not feel well

enough to meet with his visitor.  Plaintiff did not appear to be in serious pain or distress.  He said

nothing about having chest pains.  He did not ask Officer Eaton to contact health care staff or request

immediate medical treatment.  Defendants Waite, Guilfoyle and Smith did not witness plaintiff

experiencing serious pain or emergent distress.  Plaintiff never asked Waite, Guilfoyle, or  Smith to

contact health care on his behalf.  On the present record, no reasonable trier of fact could find that

defendants were deliberately indifferent to a serious medical need.  I find that defendants Smith,

Waite, Guilfoyle and Eaton are entitled to judgment in their favor as a matter of law on plaintiff's

Eighth Amendment claims.

### 3.    Exhaustion of Administrative Remedies

Defendant Czop has raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  Exhaustion is mandatory. *Woodford*, 548 U.S. at 85.  "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220.  Plaintiff did not file any grievance against Dr. Czop and the time within which to do so has long since passed.  Plaintiff did not properly exhaust any claim against Dr. Czop. *See Woodford*, 548 U.S. at 90, 93; *Siggers*, 652 F.3d at 692.

### Recommended Disposition

For the foregoing reasons, I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.  I further recommend that defendants' motions for summary judgment (docket #s, 18, 37, 41) be granted, and that judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities.

Dated:  February 1, 2012            /s/  Joseph G. Scoville                                            
                                                     United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).